## DENNIS BRIGHAM *versus* FERDINAND CLARK.

After pleading to the merits it is too late for the defendant to object, that the writ was served illegally by arresting the defendant without an affidavit that he was indebted to the plaintiff.

The plaintiff and F, merchants in Boston, having agreed to purchase together a Spanish ship, one moiety each, and having given to the vendor their respective notes for their respective moieties, the ship was delivered by the vendor to F, subject to F's directions, with a power of attorney from the Spanish owner to make sale of her, it being the intention of the plaintiff and F that she should retain her Spanish character.  F, as ship's husband, repaired and fitted her out, charging his disbursements in an account with the ship, and consigned her to the defendant, a merchant in Havana, with authority to employ her and to sell her, stating to the defendant that one moiety was owned by the plaintiff and the other moiety by F, and directing the defendant to keep his accounts with the respective owners separate.  The defendant employed the ship at Havana, and received her earnings and paid her disbursements, and sold her and received the proceeds.  Before any account had been rendered by the defendant, the plaintiff failed, and made a general assignment of his property in trust for his creditors, to which F became a party ; and soon afterwards F failed, and made a like assignment, to which the plaintiff's assignees became a party, there being other dealings between the plaintiff and F, besides those relating to this ship ; and each assignment contained a release on the part of the creditors, of all their demands against the assignor.  It was *held*, that neither the plaintiff nor F took any legal title in the ship, but only an equitable interest, secured by the power of attorney ; that the plaintiff's assignees therefore took only a chose in action in the plaintiff's share of the ship, her earnings and proceeds; that consequently an action for such share was rightly brought by the assignees in the name of the plaintiff ; that it was also rightly brought in the name of the plaintiff alone, without joining F ; that the release by the plaintiff's assignees, to F, of all demands, did not divest the equitable interest of the plaintiff or of his assignees in the ship and her earnings ; and that the advances made by F as ship's husband, did not give him a lien on the plaintiff's share in the ship

and her earnings, nor entitle the defendant to retain the same as a set-off against a debt due from F to the defendant.

The plaintiff's assignees having made a demand upon the defendant, when he happened to be in Boston, to account to them for the plaintiff's share in the earnings and proceeds of the ship, and the defendant having thereupon denied his liability to account with the plaintiff or his assignees, it was *held*, that the defendant, by such denial, had waived his right to object that no demand was made upon him at Havana.

ASSUMPSIT, brought in the name of Brigham, a merchant in Boston, against Clark, a merchant in Havana, for money had and received, to recover one half of the proceeds of the sale of a Spanish brig called the Hermosa Habonera, alleged to have been sold by the defendant at Havana, for account of the plaintiff, and also to recover one half of the balance of freights and earnings of the same vessel received by the defendant to the plaintiff's use. The cause was tried before *Shaw* C. J.

The brig was owned by one Aizpurua, a Spanish merchant in Havana. He executed a power of attorney to Thomas B. Gulliver of New Orleans, authorizing him to sell the vessel and apply the proceeds to his own use, with power of substitution. Gulliver executed a similar power to Jesse Robinson, containing a stipulation, that of the proceeds of the sale, 4000 dollars should be paid to the late firm of Thayer & Hurd of New Orleans, and Robinson brought the brig to Boston.

At Boston, in September, 1833, an agreement was entered into between the plaintiff and the house of P. & C. Flint & Co., to purchase the brig for $4,500, and thereupon Robinson and Thayer, who was also in Boston, relinquished their interest in the brig " to the Flints as owners, leaving her subject to their orders." Whereupon Brigham paid one half of the purchase money, by his notes payable on time, and endorsed by the Flints ; and the Flints, in like manner, paid the other half by their notes endorsed by Brigham ; all of which notes were received by Thayer. On account of the failure of Brigham and the Flints before the notes became due, they have never been paid.

The brig thus purchased was taken charge of by the Flints, as ship's husband, and put in thorough repair, and fitted for a voyage, at an expense of about $2,700. These expenses were

charged by the Flints in an account opened in their books
with the brig Hermosa, and no part of them was paid by the
plaintiff.

The brig was loaded and sent to the Havana by the Flints,
with a letter, dated October 5, 1833, by which the vessel was
consigned to the defendant, with authority to receive the out-
ward freight, to employ the brig in the freighting business for
the account of the owners, or to sell her, as he should think
most for their interest, the power derived from the original
Spanish owner, in whose name the vessel still stood, being
communicated to the defendant for that purpose. This letter
from the Flints stated, that they had purchased the brig with
the plaintiff jointly, one half each ; suggested that the defend-
ant should send the brig to Charleston for a cargo of rice, in
which case he was at liberty to instruct the consignees in
Charleston to draw on the Flints " for one half the amount,
on Dennis Brigham for the other half, the property to be
shipped separate and sales made separate ; " and gave direc-
tions to the defendant that the accounts " should be kept sep-
arate with the other owner, to avoid complicated accounts."
After the arrival of the vessel the defendant addressed several
letters to the plaintiff, dated in November and December
1833, and January 1834, in which the plaintiff was addressed
as an owner.

The defendant received the outward freight to Havana,
paid the necessary disbursements, obtained employment for
the brig by charter on a voyage to Bremen and back to Ha-
vana, received the charter money and paid the disbursements,
and some time in the summer of 1834 effected a sale of the
vessel for about 5000 dollars, which he received.

After the brig had sailed for Havana in October 1833, and
before any account had been rendered by the defendant to
the plaintiff, the plaintiff failed and made an assignment, dated
February 6, 1834, of all his property to W. Freeman and R.
Edes, for the benefit of his creditors, to which assignment the
Flints became a party, there being other accounts and deal-
ings between the plaintiff and the Flints ; and on February 8,
1834, the Flints failed and made an assignment of their prop-
erty for the benefit of their creditors, to C. W. Cartwright

and E. Train, to which assignment Freeman and Edes, as the assignees and attorneys of the plaintiff, became a party.

Soon after the plaintiff's assignment, Freeman and Edes gave notice thereof to the defendant, and called for a general account. In October, 1834, the defendant being in Boston, Freeman sent for him and informed him that the plaintiff had stated among his property, an interest in the brig Hermosa, her earnings and proceeds, in the hands of the defendant, and that the assignees wished an account of them, and wished the defendant to make a statement in writing ; to which the defendant replied, that he did not know that the plaintiff's assignees had any right to question him or call for any account on that subject ; and no account was rendered.

Afterwards the claim against the defendant was assigned by the plaintiff's assignees to Thayer, and about the same time this action was brought for Thayer's benefit.

A preliminary objection was taken by the defendant, that the action being commenced by an arrest of the defendant, on a cause of action accruing after July 4, 1834, without an affidavit, that the claim was justly due, &c., was contrary to *St.* 1834, *c.* 167, and could not be maintained ; but the objection was overruled, on the grounds, that it did not appear that the debt was contracted after July 4, 1834, and that the exception, if well founded, was matter of abatement.

Upon the subject of demand the jury were instructed, that the demand being made by one of the assignees, if the defendant did not refer to his accounts at Havana or elsewhere, or ask for time to inquire, but intended generally and explicitly to deny his liability to account with the plaintiff or his assignees, for the earnings and proceeds of the brig, it was a sufficient demand and refusal to maintain the action, if he was found liable.

The general grounds of defence were, that the defendant was responsible only to the Flints, by whom the vessel was sent to him, and as they were indebted to him on their failure, he had an interest in accounting to them only.

1. The defendant contended, that if the plaintiff took any interest by the transfer as made between Thayer and Robinson and the plaintiff and the Flints in the autumn of 1833, it

was one half of the brig in specie, and if so, then it passed
by the assignment of February 6, 1834, to Freeman and
Edes, after which no action could be maintained by the plain-
tiff in his own name, either for the earnings or for the pro-
ceeds of the brig.  The jury were instructed, that neither
the plaintiff nor the Flints had any legal title in the vessel ;
that they had a right to have the vessel sold in the name of
the Spanish owner, and to claim the proceeds in the nature
of a chose in action, and though the beneficial interest passed
to the assignees, it was to be pursued like a chose in action,
in the name of the assignor, and that in this respect the action
was properly brought

2.  It was contended by the defendant, that the plaintiff,
not having paid any part of the purchase money for the brig
or her repairs or outfits, and having permitted the Flints to
take charge of her, in effect relinquished his equitable interest
to them in this way; his assignees became party to the as-
signment of the Flints, in which there is a general clause of
release of all claims.  Also that by the same assignment the
Flints transferred all their right, title and interest in the brig
to their assignees, and that the assignees of the plaintiff by
becoming party to that instrument, affirmed and ratified that
transfer, and that it must be taken as the transfer of the whole
equitable title to that vessel.

Upon this part of the case the jury were instructed, that if
under the original agreement to purchase the vessel in moie-
ties by the Flints and the plaintiff, and by the documents then
executed, they became equitable tenants in common, the mu-
tual arrangement made by them, that the Flints should act as
ship's husband and manage the vessel for the account of both,
and the circumstances under which she was sent to Havana,
would not enlarge the title or claim of the Flints, and that a
mere release to them of all claims and demands would not
operate to divest the equitable interest of the plaintiff or his
assignees, or to enlarge or vary the interest of the Flints or
their assignees.

On the other part of the exception, the jury were instruct-
ed, that the assignment by the Flints of all their right, title and
nterest in the Hermosa, must be construed of such interest

as they had or should prove to have, whether the whole or a moiety, legal or equitable, that the execution of the Flint's assignment by the assignees of the plaintiff, could be construed as an affirmance and ratification to the same extent only, and therefore could not affect the question what that interest was.

3. That if the plaintiff had any cause of action against the defendant, it was a joint action with the Flints, and not a several action in his own name. Upon this point the jury were instructed, that the letter of the Flints to Clark was notice to him of the several interests of themselves and of the plaintiff, and that in case of a sale the defendant was bound to account to them severally for the proceeds; especially was he bound so to do after the failure of the respective parties and notice of the transfer of the proceeds. As to the account of earnings and disbursements, it might stand on a different footing; if however the jury should be satisfied upon the evidence, which was left to them for that purpose, that the defendant kept his account in such a manner as to charge the parties respectively for their proportions of the disbursements and to credit them with their proportions of the earnings, then they might consider that account also as several, and if there was any balance due, then they were to allow the plaintiff one half, but if they found otherwise, then they were to allow the plaintiff nothing on that account in the assessment. The jury afterwards stated, in answer to an inquiry, that they considered that it was intended by the defendant to keep the account with the parties severally.

4. That although it might have been the intention of the Flints and the plaintiff, that the latter should have an interest in this vessel, it was afterwards abandoned and given up.

On this the jury were instructed, as before stated, that so far as this result was supposed to arise from the assignments, they could not have that effect. As to the fact that the Flints paid for the repairs and outfits, and took charge of the vessel, if they did so, as ship's husband, and for account of the parties according to their interest and by mutual consent, that the plaintiff became debtor to the Flints for a moiety of the expenses of outfits, and that neither the act of making the

repairs nor that of employing the vessel in the manner expressed in their letter to Clark, altered or enlarged their interest in the vessel, or impaired or diminished that of the plaintiff.

5. The jury were also instructed, that when the vessel was sent to the defendant, with notice of the plaintiff's several interest, whatever it was, with a power to sell, if the defendant thereby became liable to account severally with the plaintiff, that liability was a chose in action in the plaintiff, and although the beneficial interest passed to the plaintiff's assignees, it was the assignment of a chose in action and the action was rightly brought in the name of the assignor.

6. It was insisted, that the defendant had a right to hold the balance and to set it off against the debt of the Flints, because whilst the vessel was under his care he made large advances to the Flints, and relied upon this among other property for his security. Upon this it was ruled, that if the defendant had recognized the plaintiff's separate interest and undertaken to account with him separately, no act of either the defendant or the Flints, could make it liable for their debts.

7. On the subject of damages the defendant insisted, that if he was liable at all, he had a right to deduct one half of the sum of about $2,700, paid by the Flints for repairs and disbursements, and which the plaintiff had not reimbursed at the time of the failure of both parties. It appeared that this sum had been charged by the Flints to an account opened in their books with the brig Hermosa, but which, at the time of their failure, had never been transferred or debited to the plaintiff; and the books in this respect had not since been altered. The jury were instructed, that the Flints, by their disbursements for supplies and outfits here, had no lien on the plaintiff's moiety of the vessel, for the moiety of such disbursements, and no such right was transferred to the defendant; that is, had the parties been the legal owners of the vessel in moieties, the advances by one for repairs and supplies would not give him a lien on the moiety of the other for reimbursement, and that as equitable part owners, the parties

Brigham
v.
Clark.

stood on the same footing toward each other in respect to their equitable interests.

The jury found a verdict for the plaintiff, for one half of the proceeds of the sale of the vessel and one half of the balance due from the defendant for her earnings, after deducting his disbursements.

*March 6th.*  *H. H. Fuller* and *Washburn*, for the defendant.  To the point, that the defendant might avail himself of one half of the sum expended by the Flints, on account of the plaintiff, for outfits and repairs, they cited 2 Story on Equity, 489 ; *Mumford* v. *Nicoll*, 20 Johns. R. 611 ; that the action should have been in the name of the plaintiff's assignees, *Carter* v. *Jarvis*, 9 Johns. R. 143 ; *Morrough* v. *Comyns*, 1 Wils. 211 ; *Usher* v. *De Wolf*, 13 Mass. R. 290 ; *Smith* v. *Dennie*, 6 Pick. 262 ; *Clowes* v. *Hawley*, 12 Johns. R. 484 ; *The Sarah Ann*, 2 Sumner, 211 ; and that a demand should have been made at Havana, *Clark* v. *Moody*, 17 Mass. R. 145.

*C. G. Loring* and *F. C. Loring*, for the plaintiff, cited in regard to the service of the writ, *Rathbone* v. *Rathbone*, 4 Pick. 89 ; *Ripley* v. *Warren*, 2 Pick. 592 ; as to the sufficiency of the demand, *Clark* v. *Moody*, 17 Mass. R. 148 ; *Gilmore* v. *Holt*, 4 Pick. 258 ; *Langley* v. *Sturtevant*, 7 Pick. 214 ; *Harding* v. *Davies*, 2 Carr. and Payne, 77 ; 3 Stark. Ev. 1391.

*March 19th.*  WILDE J. delivered the opinion of the Court.  We have considered the several exceptions to the instructions to the jury, although some of them have not been much relied on in the argument.

1. The first exception, as to the supposed illegality of the service of the writ, has been very properly waived by the defendant's counsel, for it is not supported either by the law, or the evidence.  The facts assumed were not proved, nor could proof of them be admitted under the general issue. All objections to the process, and the service of the writ, must be taken advantage of by plea in abatement, or by motion to dismiss the suit when the defect appears of record.  By pleading to the action the defendant waived all such objections.

2. Not much more can be said in support of the objection

to the form of the action, namely, that the Flints should have been joined, and that several actions cannot be maintained. If the plaintiff had any interest in the brig sold by the defendant, he was tenant in common with the Flints, and whether this was a legal or equitable interest is immaterial in respect to this objection, as the defendant was notified that the plaintiff was the owner of one half of the brig, and he was requested to keep a separate account of his share of the earnings and disbursements. With this notice that the interests of the plaintiff and the Flints were several, the defendant was bound to account with them severally, according to their respective interests, for the proceeds of the sale of the brig. A joint action might have been brought for the earnings, if there had been no agreement nor understanding that the accounts should be kept separately. But the jury have found that there was such an agreement or understanding, and that in fact the defendant kept his accounts of the earnings and disbursements separately, according to his instructions from the Flints.

3. We think also that the objection as to the sufficiency of the demand on the defendant to account is unfounded. The instruction to the jury on this point was perfectly correct. If the defendant denied his responsibility to account with the plaintiff, or his assignee, it is immaterial where the demand was made. After such a refusal no further demand was necessary, for the law never compels a party to do an act wholly useless.

4. The fourth objection, which was overruled at the trial, is, that if the plaintiff had any interest in the brig Hermosa, it was a legal title, and if so, then it passed by the assignment of the 6th of February 1834, from the plaintiff to Freeman and Edes, and consequently that no action can be maintained in the name of the plaintiff for any earnings after that time, or for the proceeds of sale. Upon this point the jury were instructed, that by the documents in evidence neither the plaintiff nor the Flints had any legal title in the vessel, but only an equitable interest, secured by the power of attorney in the case ; and that, notwithstanding that power, and the transfer of it, the legal property remained in the Spanish owner. These instructions appear to be fully supported by the documents. The Spanish owner made no sale, but only

gave one Gulliver a power of attorney to sell the vessel and to appropriate the proceeds of sale to his own use. Gulliver made a similar power to Jesse D. Robinson for the benefit of the late firm of Thayer & Hurd, and if the plaintiff and the Flints had any legal title to the vessel, they must derive it from Robinson or from Thayer. The only claim they have, according to the documentary evidence, is under their relinquishment, and that is only a release of their respective interests, and as they had no legal interest in the vessel, none consequently could pass. Where a conveyance is made by virtue of a power, it must be made in the name of the principal or owner, but these releases from Robinson and Thayer to the Flints are neither made in the name of the Spanish owner, nor do they release or convey his interest or title.

But if the legal title had been conveyed to the Flints, there is no evidence that they conveyed a share to the plaintiff, and they might well own a moiety in their own right, and the ther moiety in trust for the plaintiff.

It has been argued that a bill of sale was not necessary to transfer the property in the vessel, and that a sale by parol would be sufficient. But there was no evidence of any such sale, and the instructions to the jury on this point were limited to the construction of the documentary evidence.

It is very clear, therefore, that the instructions thus given were correct, and that there was no evidence in the case to show that the legal title was ever transferred from the Spanish owner to the plaintiff and the Flints, or to either of them.

But it has been argued, that if the plaintiff had an equitable title to the moiety of the vessel, as he undoubtedly had, that passed to his assignees, and that the action for the earnings of the vessel after the assignment, and for the proceeds of the sale, should have been brought in the name of the assignees.

There would be great weight in this argument, if the defendant had assented to the assignment, and had agreed to account with the assignees. But there was no evidence of any such assent and agreement. On the contrary, when the defendant had notice of the failure of the Flints, he claimed the right to account with them for the whole of the earnings and proceeds of the vessel. There is therefore no privity of con

tract between the defendant and the plaintiff's assignees, and no action could be maintained in their names. Their only right to maintain this action in the name of the plaintiff, is an equitable right in a chose in action.

As to the remaining objections, namely, that the plaintiff had relinquished his right in the vessel, and that the defendant had a right to deduct the advances made by the Flints, we think the answers given at the trial, as they appear in the report, are perfectly satisfactory.